# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

WILLIAM JONES,            )
                               )
      Plaintiff/Appellant,      )
                               )     Davidson Chancery
                               )     No. 92-2644-II
VS.                        )
                               )     Appeal No.
                               )     01A01-9510-CH-00484
JEFF REYNOLDS, Commissioner, )
Tennessee Department of Correction, )
                               )
      Defendant/Appellee.     )

**FILED**

**July 2, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE C. ALLEN HIGH, CHANCELLOR

For the Plaintiff/Appellant:

William Jones, Pro Se

For the Defendant/Appellee:

Charles W. Burson
Attorney General and Reporter

Patricia C. Kussmann
Counsel for the State

# AFFIRMED IN PART; VACATED IN PART;
# AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This is the second appeal concerning a dispute between a prisoner and the Department of Correction over the calculation of the prisoner's sentence reduction credits. After the Department summarily denied his second request for recalculation of his sentence credits, the prisoner filed a petition for declaratory judgment in the Chancery Court for Davidson County asserting that the Department had miscalculated his sentence credits. The trial court granted the Department's motion for summary judgment, and the prisoner again appealed to this court. We have determined that the summary judgment dismissing the prisoner's ex post facto claims should be affirmed but that the summary judgment dismissing the remaining claims must again be vacated.

## I.

William Jones has an extensive criminal record. In March 1976, he was convicted in a Shelby County Criminal Court of seven counts of grand larceny and received seven concurrent three to five year sentences. He was paroled to a Haywood County detainer in April 1977 and apparently escaped while in Haywood County's custody. He was recaptured and returned to state custody but was apparently released on parole in July 1977. Two months later, Mr. Jones and a confederate kidnapped a woman in Haywood County. During the next month, Mr. Jones participated in a string of armed robberies in Shelby County, resulting in the death of one person.

On May 1, 1978, Mr. Jones was sentenced in Haywood County to serve ten to fifteen years for simple robbery and thirty years for kidnapping.[1] On November 30, 1978, he received another five to ten year sentence in Fayette County for simple robbery. On December 18, 1978, he was sentenced in Haywood County to two years for escape and two years for petit larceny. Finally, on January 22,

---

[1]The Court of Criminal Appeals later affirmed these convictions. *Jones v. State,* Haywood Crim. No. 2 (Tenn. Crim. App. April 26, 1979). A habeas corpus proceeding concerning the validity of the kidnapping sentence is currently pending in the Criminal Court for Davidson County by order of the Tennessee Supreme Court. *See Jones v. State,* App. No. 01C01-9308-CR-00272, 1996 WL 56660 (Tenn. Feb. 12, 1996).

1979, Mr. Jones was sentenced in Shelby County to concurrent 62-year sentences for second degree murder and six counts of armed robbery. Mr. Jones is now incarcerated at the Turney Center serving an indeterminate sentence of 47 to 62 years.

Since 1992, Mr. Jones has filed five separate actions in three different trial courts challenging various aspects of his sentence. The procedural confusion caused by these different suits has been compounded by the imprecision of Mr. Jones's numerous pro se papers and by the Department's preference for dilatory pleadings rather than direct responses to Mr. Jones's assertions. In order to avoid adding to the confusion, we find it necessary to point out at this early stage what this case is about and, of equal importance, what it is not about.

This case relates solely to the manner in which the Department of Correction has calculated Mr. Jones's good conduct sentence credits. It does not involve his habeas corpus petition asserting that the passage of the Tennessee Criminal Sentencing Reform Act of 1989 reduced his sentence.[2] It does not involve either his petition for declaratory judgment asserting that he had been wrongfully excluded from consideration for early release[3] or his motion in the Circuit Court for Haywood County to correct his kidnapping sentence.[4] Finally, it does not involve his habeas corpus petition attacking the validity of his kidnapping sentence.[5]

---

[2]This claim was resolved adversely to Mr. Jones. *State ex rel. Jones v. McWherter,* App. No. 01C01-9204-CR-00124, 1992 WL 335918 (Tenn. Crim. App. Nov. 18, 1992), *perm. app. denied* (Tenn. Mar. 1, 1993).

[3]This claim was resolved adversely to Mr. Jones. *Jones v. Bradley,* App. No. 01A01-9308-CH-00373, 1993 WL 532586 (Tenn. Ct. App. Dec. 17, 1993), *perm. app. denied* (Tenn. April 4, 1994).

[4]This claim was resolved adversely to Mr. Jones. *State v. Jones,* App. No. 02C01-9406-CC-00134, 1995 WL 126625 (Tenn. Crim. App. Mar. 22, 1995).

[5]The Court of Criminal Appeals affirmed the trial court's dismissal of the petition. *Jones v. State,* App. No 01C01-9308-CR-00272, 1995 WL 422497 (Tenn. Crim. App. July 14, 1995). However, the Supreme Court reversed and remanded the case to the trial court to determine whether Mr. Jones had been convicted of kidnapping or kidnapping for ransom. *Jones v. State,* App. No. 01C01-9308-CR-00272, 1996 WL 56660 (Tenn. Feb. 12, 1996).

In June 1992, Mr. Jones requested a declaratory ruling from the Department concerning the computation of his sentence credits. He asserted that he was entitled to 5,086 days of credit for good and honor time prior to July 1, 1981, incentive time under Tenn. Code Ann. § 41-21-228 (1982) (Repealed 1985), and good conduct sentence credits under Tenn. Code Ann. § 41-21-229 (1982) (Repealed 1985). After the Department did not respond, Mr. Jones filed a petition for declaratory judgment in the Chancery Court for Davidson County. The trial court summarily dismissed the petition; however, this court vacated the summary judgment and remanded the case to the Department with directions to consider Mr. Jones's request for a declaratory order. *Jones v. Reynolds,* App. No 01A01-9302-CH-00055, 1993 WL 166925 (Tenn. Ct. App. May 19, 1993), *perm. app. denied,* (Tenn. Sept. 7, 1993).

On remand, the Department's lawyer denied Mr. Jones's request for a declaratory ruling, stating formulaically that his petition was "not well-taken and is, therefore, denied." On February 28, 1994, Mr. Jones filed another petition for declaratory judgment in the trial court. The Department moved for summary judgment, relying on affidavits of two employees responsible for computing sentence credits and parole eligibility dates. One employee stated that Mr. Jones had been awarded "a total of 1,872 days in Incentive Credits and PPSC" and that his probationary parole date was February 18, 2002. The other employee stated that Mr. Jones's probationary parole date was December 30, 2002.[6]

The difference between the two probationary parole dates was compounded ten days later when Mr. Jones received a letter from a different Department employee on another matter stating that his initial parole hearing would be in 1996.[7] Mr. Jones countered the Department's affidavits with his own affidavit

_____

[6]The Department offered no explanation for different probationary parole dates in the two affidavits. The discrepancy may be due to the fact that one affidavit was prepared on October 16, 1992, while the other was prepared on July 7, 1994. The February 18, 2002 probationary parole date may reflect additional incentive credits that Mr. Jones earned after the October 1992 affidavit was prepared.

[7]This letter concerned Mr. Jones's request for consideration for early parole. It referenced a June 24, 1992 e-mail message from Deborah L. Miller who, at the time, was the executive director of the Board of Paroles. Ms. Miller sent Mr. Jones another e-mail message on August 21, 1992 contradicting her June 24, 1992 message in which she stated that "TDOC is responsible for the computation of dates. TDOC's computer now shows that your earliest
(continued...)

-4-

containing a year-by-year calculation of his sentence credits. According to Mr. Jones, he was entitled to 4,298 days of sentence credits, and his probationary parole eligibility date should have been in 1992. On November 9, 1994, the trial court denied the Department's summary judgment motion without prejudice on the grounds that the Department had not addressed whether Mr. Jones was eligible to continue to earn Tenn. Code Ann. § 41-21-228 incentive credits and had not explained the earlier correspondence and e-mail message stating that Mr. Jones's initial parole hearing would be in 1996.

In January 1995, the Department renewed its motion for summary judgment and provided two new supporting affidavits. One affidavit addressed the earlier correspondence about Mr. Jones's 1996 parole date. The second affidavit contained new calculations concerning Mr. Jones's sentence credits and probationary parole date. Contrary to the earlier affidavits, the second affidavit stated that Mr. Jones's probationary parole date was now December 20, 2001 and that he had been awarded "2,247 days PPSC, which includes any Incentive time earned and maintained prior to September 1, 1980." Neither affidavit offered an explanation for the differences in the Department's previous calculations of Mr. Jones's sentence credits and probationary parole date.

In an effort to traverse this factual labyrinth, the trial court directed the parties to address the question of whether calculating Mr. Jones's sentence credits pursuant to statutes passed after he was convicted violated the ex post facto clause in U.S. Const. art. I, § 10, cl. 1. After receiving the parties' responses, the trial court again granted the Department's motion for summary judgment. When the trial court denied his petition for rehearing, Mr. Jones again appealed to this court.

## II.

---

[7](...continued)
parole eligibility date is in 2003. . . . I will not respond to any further inquiries on this issue."

Prisoners do not have an inherent right to sentence reduction credits. These credits are creatures of statute, and thus the right to receive or accrue credits depends on the statutes authorizing them. The Department has administered several different sentence credit programs since Mr. Jones was first incarcerated. Thus, as our first order of business, we must identify the sentence credit laws applicable to Mr. Jones before we can begin to determine whether the Department has correctly calculated his sentence reduction credits.

## A.
### GOOD CONDUCT SENTENCE CREDITS

When Mr. Jones was first incarcerated for his current convictions, prisoners were entitled to receive credits for good behavior, *see* Tenn. Code Ann. § 41-332 (1975) (repealed 1985)[8] and additional credits for honor time. *See* Tenn. Code Ann. § 41-334 (1975) (repealed 1985).[9] Tenn. Code Ann. § 41-332 provided that prisoners could earn one month of good time credit for the first year of incarceration, two months of credit for the second year, three months for the third year, and four months for every subsequent year of imprisonment. In addition to these good time credits, Tenn. Code Ann. § 41-334 authorized two months of honor time credit for each year of the prisoner's sentence.

In 1980 the General Assembly enacted new sentence credit statutes that were intended to completely replace Tenn. Code Ann. §§ 41-332 and 41-334 beginning on July 1, 1981.[10] Tenn. Code Ann. § 41-359 (later designated as Tenn. Code Ann. § 41-21-229) established a system of "good conduct sentence credits" that prisoners could earn by proper behavior, and Tenn. Code Ann. § 41-361 (later designated as Tenn. Code Ann. § 41-21-231) provided a mechanism for

---

[8]In 1982, the designation of Tenn. Code Ann. § 41-332 was changed to Tenn. Code Ann. § 41-21-212.

[9]In 1982, the designation of Tenn. Code Ann. § 41-334 was changed to Tenn. Code Ann. § 41-21-214.

[10]Act of April 17, 1980, ch. 805, 1980 Tenn. Pub. Acts 942, codified at Tenn. Code Ann. §§ 41-332 to -335 & 41-359 to -363. These statutes were later designated as Tenn. Code Ann. §§ 41-21-212 to -215 & 41-21-229 to -233. They were repealed in 1985. *See* Act of Dec. 5, 1985, ch. 5, § 14, 1985 Tenn. Pub. Acts (1st Ext. Sess.) 22, 26, codified at Tenn. Code Ann. § 41-21-236(g) (1990).

converting Tenn. Code Ann. §§ 41-332 and 41-334 credits earned prior to July 1, 1981 to "good conduct sentence credits." The General Assembly envisioned that the new good conduct sentence credit program would apply across-the-board to all prisoners and thus did not provide a waiver or opt-in system to prisoners who committed crimes prior to July 1, 1981.

The General Assembly enacted another sentence reduction program in 1985 that established a "prisoner sentence reduction credit" program.[11] Prisoners who committed felonies prior to December 11, 1985 could not participate in this program unless they signed a written waiver in accordance with Tenn. Code Ann. § 41-21-236(c)(3), -236(g) (1990). Prisoners electing not to sign a waiver continue to accrue sentence reduction credits in accordance with the applicable pre-existing sentence credit statutes. *See* Tenn. Code Ann. § 41-21-236(g).

## B.
### INCENTIVE SENTENCE CREDITS

In addition to being able to earn the sentence credits authorized by Tenn. Code Ann. §§ 41-332 and 41-334, prisoners were are also able to earn educational and job performance credits when Mr. Jones was incarcerated for his present offenses. *See* Tenn. Code Ann. § 41-358 (1975) (repealed 1985).[12] This statute permitted prisoners to earn incentive credits for participating in educational programs approved by the Department or for performing "above average" in job placements. These credits accrued at the rate of one day of credit for each six days of participation during the first ten years of a prisoner's term and thereafter increased to two days of credit for every six days of participation. Prisoners could not earn more than thirty days of incentive credit during the first year of their sentence; they could earn no more than sixty days per year during the second through tenth years of their sentence; and they could earn no more than ninety days per year thereafter.

---

[11]Act of Dec. 5, 1985, ch. 5, § 12, 1985 Tenn. Pub. Acts (1st Ext. Sess.) 22, 24, codified at Tenn. Code Ann. § 41-21-236 (1990).

[12]In 1982, the designation of Tenn. Code Ann. § 41-358 was changed to Tenn. Code Ann. § 41-21-228.

In 1980, the General Assembly enacted another incentive program offering "prisoner performance sentence credits" (commonly referred to as "PPSC"). *See* Tenn. Code Ann. § 41-360 (Supp. 1981) (repealed 1985).[13] This program permitted prisoners to earn between one and fifteen days of incentive credit per month depending on the program to which they were assigned. While this statute did not expressly repeal Tenn. Code Ann. § 41-358, its language permits no other result.[14]

The General Assembly repealed the PPSC program in 1985 in the same legislation that established the prisoner sentence reduction credit program in Tenn. Code Ann. § 41-21-236.[15] The 1985 statute permits prisoners who committed their offenses prior to December 11, 1985 to opt into the new sentence reduction credit program. Prisoners opting into the new program accrue prisoner sentence reduction credits in accordance with Tenn. Code Ann. § 41-21-236(a). Prisoners electing not to opt into the new program continue to earn prisoner performance sentence credits under Tenn. Code Ann. § 41-21-230. *See* Tenn. Code Ann. § 41-21-236(g).

## C.

Mr. Jones committed his offenses prior to December 11, 1985. Accordingly, he is not entitled to earn credits under Tenn. Code Ann. § 41-21-236(a) unless he signed a written waiver in accordance with Tenn. Code Ann. § 41-21-236(c)(3), -236(g). Since there is no evidence in this record that Mr. Jones

---

[13]Act of April 17, 1980, ch. 805, § 2, 1980 Tenn. Pub. Acts 942, 945. In 1982, the designation of Tenn. Code Ann. § 41-360 was changed to Tenn. Code Ann. § 41-21-230.

[14]Tenn. Code Ann. § 41-360(b) states that the prisoner performance sentence credits "shall affect parole eligibility and sentence expiration dates in the same manner as incentive time credits affected such dates prior to September 1, 1980." The Attorney General and Reporter issued two opinions concluding that Tenn. Code Ann. § 41-360 replaced 41-358 and that it applied to prisoners whose offenses were committed prior to the effective date of Tenn. Code Ann. § 41-360. Tenn. Att'y Gen. Op. 90-60 (May 15, 1990); Tenn. Att'y Gen. Op. 81-13 (Jan. 9, 1981).

[15]Act of Dec. 5, 1985, ch. 5, § 14, 1985 Tenn. Pub. Acts (1st Ext. Sess.) 22, 26.

has signed this waiver,[16] he is entitled to earn good conduct credits in accordance with Tenn. Code Ann. § 41-21-229 and to accrue prisoner performance sentence credits in accordance with Tenn. Code Ann. § 41-21-230. With these legal conclusions in mind, we will now proceed to examine the Department's motion for summary judgment.

## III.

Mr. Jones's papers, construed in their most favorable light, appear to claim that the Department has incorrectly calculated his sentence reduction credits for two reasons: first because it has unconstitutionally applied later-enacted sentence credit statutes to him and second because its calculations contain mistakes. The Department's affidavits purport to provide undisputed facts demonstrating that it is entitled to a judgment as a matter of law on both claims.

## A.

Parties seeking a summary judgment have the burden of demonstrating the absence of material factual disputes and their entitlement to a judgment as a matter of law. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997); *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993); *Gibbons v. Schwartz-Nobel,* 928 S.W.2d 922, 926 (Tenn. Ct. App. 1996). These requirements are stringent. *Baker v. Lederle Labs,* 696 S.W.2d 890, 893 (Tenn. Ct. App. 1985). Accordingly, the courts will grant a summary judgment only if the facts and the conclusions to be drawn from the facts demonstrate that the moving party is entitled to a judgment as a matter of law. *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn. 1981); *Mansfield v. Colonial Freight Sys.,* 862 S.W.2d 527, 530 (Tenn. Ct. App. 1993). They will decline to grant a summary judgment if any uncertainty or doubt exists with regard to the facts or the conclusions to be drawn from the facts. *Byrd v.*

---

[16]The record contains a document dated November 20, 1986, indicating that Mr. Jones's counselor informed him that he was "not eligible to sign a waiver at this time." We have held in other circumstances that prisoners are entitled to be fully informed of their right to select between sentence credit programs. *Crowder v. Tennessee Dep't of Correction,* App. No. 01A01-9203-CH-00105, 1992 WL 207761 (Tenn. Ct. App. Aug. 28, 1992), *perm. app. denied* (Tenn. Dec. 28, 1992). Mr. Jones has not asserted in this case that he was not fully informed of his options, and, in fact, asserts in his brief that he is entitled to Tenn. Code Ann. § 41-21-229 credits. Accordingly, the waiver issue is not before us.

*Hall,* 847 S.W.2d at 211; *Poore v. Magnavox, Inc.,* 666 S.W.2d 48, 49 (Tenn. 1984).

The courts customarily treat the nonmoving party's papers more indulgently than they do the moving party's papers. The evidence supporting and opposing the summary judgment motion will be considered in the light most favorable to the nonmoving party. *Speaker v. Cates Co.,* 879 S.W.2d 811, 813 (Tenn. 1994). In addition, the nonmoving party is entitled to all favorable inferences that can be reasonably drawn from the evidence. *Byrd v. Hall,* 847 S.W.2d at 210-11; *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991).

## B.
### THE EX POST FACTO CLAIMS

Like the trial court, we find Mr. Jones's ex post facto claims difficult to understand. They can, at most, relate to only three circumstances: the implementation of the PPSC program under Tenn. Code Ann. § 41-21-230 on September 1, 1980, the establishment of the good conduct sentence program under Tenn. Code Ann. § 41-21-229 on July 1, 1981, and the transition to the prisoner sentence reduction credit program on December 11, 1985. The record contains no evidence that the Department has interpreted or applied these statutes in a way that has affected Mr. Jones in an unconstitutional manner.

The ex post facto clauses in both U.S. Const. art. I, § 10, cl. 1 and Tenn. Const. art. I, § 11 prohibit the enactment of laws that retroactively disadvantage prisoners by increasing their punishment. *Lynce v. Mathis,* ___ U.S. ___, ___, 117 S. Ct. 891, 896 (1997); *California Dep't of Corrections v. Morales,* 514 U.S. 499, ___, 115 S. Ct. 1597, 1601 (1995); *State v. Ricci,* 914 S.W.2d 475, 480 (Tenn. 1996). They prevent legislatures from increasing criminal punishments beyond those prescribed when the crime was committed. Since the sentence reduction credit statutes in existence when Mr. Jones committed his crimes were inherently part of his sentence, *Gilliam v. State,* 174 Tenn. 388, 391, 126 S.W.2d 305, 306 (1939), any later enacted sentence credit statutes that retroactively reduce the amount of sentence credits Mr. Jones may earn violate the ex post facto clause of

the state and federal constitutions if they impose greater punishment after the commission of the offense. *See Weaver v. Graham,* 450 U.S. 24, 36, 101 S. Ct. 960, 968 (1981).

Mr. Jones's claims in this case do not implicate the 1985 statutes establishing the prisoner sentence reduction credit program because he has never opted into this program. Therefore, his ex post facto claims can only relate to the transition to the good conduct sentence program under Tenn. Code Ann. § 41-21-229 in 1981 and to the transition to the PPSC program under Tenn. Code Ann. § 41-21-230 in 1980.

We can find no ex post facto problem with including Mr. Jones in the good conduct sentence credit program under Tenn. Code Ann. § 41-21-229. Based on our understanding of the operation of Tenn. Code Ann. §§ 41-332 and 41-334 and Tenn. Code Ann. § 41-21-229, Mr. Jones earns more sentence credits under Tenn. Code Ann. § 41-21-229 than he did under the prior law.[17] Since Tenn. Code Ann. § 41-21-229 decreases rather than increases his punishment, it is not surprising that Mr. Jones strongly insists that he is entitled to sentence credits under Tenn. Code Ann. § 41-21-229 rather than under the statutes existing at the time of his offense.

The same reasoning applies to Mr. Jones's participation in the PPSC program. The record contains no evidence that the change from the incentive program under Tenn. Code Ann. § 41-21-228 to the PPSC program under Tenn. Code Ann. § 41-21-230 had the effect of decreasing Mr. Jones's ability to accrue incentive credits. On its face, Tenn. Code Ann. § 41-21-230 permits prisoners to earn more incentive credits than they could previously earn.[18] Accordingly,

---

[17]Prisoners could earn up to 150 days per year under Tenn. Code Ann. §§ 41-332 and 41-334; while Tenn. Code Ann. § 41-21-229 permits inmates to earn 120 days of credit in their first year, 264 days of credit during the second through tenth years, and 360 days per year thereafter.

[18]Tenn. Code Ann. § 41-21-230 permits prisoners to earn up to fifteen days of PPSC credits per month. The incentive credits under Tenn. Code Ann. § 41-21-228 accrued at a slower rate and were capped at annual maximums lower than the annual maximum possible under Tenn. Code Ann. § 41-21-230.

placing Mr. Jones under Tenn. Code Ann. § 41-21-230 does not amount to an ex post facto violation.[19]

Mr. Jones's ability to earn sentence reduction credits is governed by Tenn. Code Ann. §§ 41-21-229 and 41-21-230. In light of the evidence in this record, applying these statutes to Mr. Jones has not had the effect of increasing his punishment beyond that in existence at the time he committed his offenses. Accordingly, the trial court properly granted the summary judgment dismissing Mr. Jones's ex post facto claims.

## C.
### THE DEPARTMENT'S CALCULATION ERRORS

The only remaining issue concerns Mr. Jones's claims that the Department's calculation of his sentence reduction credits contains errors. Four years ago, we remanded this case for the express purpose of obtaining a record that would facilitate proper review of Mr. Jones's petition. Unfortunately, neither the Department's denial of Mr. Jones's petition for a declaratory ruling nor its subsequent affidavits contain the sought-after information. Thus, the trial court and this court have still not been provided "the benefit of the record made in the agency." *Jones v. Reynolds, supra,* 1993 WL 166925, at *1.

There exist at least five opportunities for error in the calculation of sentence credits for prisoners like Mr. Jones. The Department could be using the wrong statutes to calculate his sentence credits, or the Department could have overlooked credits to which he is entitled. The Department could also have erred in its conversion calculations under Tenn. Code Ann. § 41-21-231 or in its calculation of Mr. Jones's credits under the statutes that replaced the sentence credit statutes in effect when Mr. Jones committed his offenses. Finally, the Department could have made improper or erroneous deductions for disciplinary or other reasons.

---

[19]Whether Mr. Jones is accruing sentence credits under Tenn. Code Ann. § 41-21-203 is not known. An affidavit filed in support of the Department's second motion for summary judgment states that "Mr. Jones is not entitled to earn inmate incentive credits at this time." Mr. Jones has not taken issue with this assertion.

As we understand the record, Mr. Jones is not asserting that the Department is applying the wrong sentence credit statutes to him. In fact, both Mr. Jones and the Department appear to agree that his sentence credits should be calculated in accordance with Tenn. Code Ann. § 41-21-229. In addition, Mr. Jones does not appear to be asserting that the Department overlooked any of his credits, that the Department's conversion calculations were incorrect, or that the Department has erroneously taken credits away from him. Thus, the only disputed issue appears to involve the manner in which the Department calculated his sentence credits under Tenn. Code Ann. § 41-21-229.

Mr. Jones provided the trial court with his own year-by-year calculations of his sentence credits. In response, the Department filed affidavits containing the results of its calculations without providing the calculations themselves. The Department's most recent affidavit, for example, states that Mr. Jones received "2,247 days PPSC, which includes any Incentive time earned and maintained prior to September 1, 1980." This response is inadequate because it does not enable the courts to review in any meaningful way how the Department arrived at the 2,247 day figure. In order to review issues of this sort, the Department should, at a minimum, provide the courts with year-by-year calculations showing (1) the statutes under which the prisoner is earning credits, (2) the number of good conduct sentence credits earned pursuant to each statute, (3) the number of incentive credits earned pursuant to each statute, and (4) any credits deducted and the reasons for the deduction.

The Department has made much of the fact that Mr. Jones's sentences will be reduced by more than thirty-five years based on its calculation of his sentence credits. This argument is not responsive to the issue. The mere fact that the Department has reduced Mr. Jones's sentence by a stated number of years does not resolve whether Mr. Jones has received all the credits due him under the law properly applicable to him. The courts' interest is not in how much Mr. Jones's sentence is reduced but rather in seeing to it that the law is properly applied.

Both this court and the trial court are, in reality, in as much need of an adequate record today as we were four years ago. There are simply too many

variables in the calculation of Mr. Jones's sentence credits for the courts to accept the results of the Department's calculations on their face. Our concern is underscored by the fact that the Department's calculations of Mr. Jones's sentence credits, and in fact Mr. Jones's own calculations, have produced different and unexplained results. Accordingly, we vacate the portions of the summary judgment not pertaining to Mr. Jones's ex post facto claims without prejudice to the parties submitting proper evidence and records demonstrating the proper calculation and application of all applicable credits to Mr. Jones's sentence.

## IV.

We affirm the summary judgment dismissing Mr. Jones's ex post facto claims and vacate the remaining portions of the summary judgment. We remand the case to the trial court for further proceedings consistent with this opinion and tax the costs of this appeal to the Department of Correction.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
SAMUEL L. LEWIS, JUDGE